## BOWLING et al. v. VIETS.

No. 24733.    Feb. 18, 1936.

Luttrell & Holland, for plaintiffs in error.

Bowles & Bowles, for defendant in error.

PER CURIAM. This action was commenced in the district court of Noble county by plaintiffs in error against defendant in error, hereinafter referred to as plaintiffs and defendant, by the filing of an action in which the plaintiffs sought to procure performance of a contract wherein plaintiffs alleged that they had agreed to purchase and defendant had agreed to sell a certain royalty interest in defendant's real estate. The action was filed on October 15, 1932, and service was procured by publication. A motion to make more definite and certain was filed by the defendant, and pursuant to an order sustaining same, the plaintiffs filed their amended petition. To this petition the defendant demurred, which demurrer, after hearing thereon, was sustained. Plaintiffs elected to stand on their petition, the trial court rendered judgment for defendant on the pleadings and dismissed the action, and an appeal was taken to this court.

The petition alleges that one Fredericks, acting as plaintiffs' agent, wired defendant at Concordia, Mo., as follows:

"Have offer from C. S. Burgess $3,000 for one-fourth royalty in your land section 27, 20 north, 2 west. Advise your accept. Wire at once. Fred Fredericks."

On the following day it appears that defendant wired Fredericks as follows:

"Accept offer. Send papers. May be little delay account wife in St. Louis. J. C. Viets."

On the following day plaintiffs wired defendant at Concordia, as follows:

"Made trade with Mr. Fredericks according to your wire. Inclosed papers with Fredericks letter registered mail. C. S. Burgess and Chas. B. Bowling."

Plaintiffs allege that they have performed all the conditions precedent on their part, and that they have tendered to said defendant the sum of $3,000; that they have demanded a conveyance of said royalty interest to them; that defendant has refused to execute and deliver such conveyance; that said first refusal was evidenced by a letter addressed to plaintiff Burgess and reads as follows:

"Concordia, Mo. Sept. 24, 1932. Mr. C. S. Burgess, Perry, Okla. Dear Sir: Received papers this morning. Wife refuses to sign and so I return papers. Respectfully yours, J. C. Viets."

Plaintiffs further allege that the defendant and his wife are now and have for a long time been residents of Missouri, and that the land in litigation is not now and has never been defendant's homestead; that plaintiffs now are and have been at all times ready and willing to make payment of the purchase price of said one-fourth royalty interest, upon execution of conveyance thereof by the defendant, and that they did not at the time of forwarding the form of conveyance to said defendant, and do not now, insist upon any particular form of mineral deed or method of payment; that they have at all times been willing to accept from defendant a general form of mineral deed conveying to plaintiffs the interest agreed upon.

Plaintiffs then prayed that the defendant be ordered to convey said premises to them by general mineral deed, and that in default thereof by said defendant, the court order and require the sheriff to execute and deliver to plaintiffs a mineral deed for said defendant, with the same effect as if executed by him.

The trial court sustained the defendant's demurrer and rendered judgment for the defendant on the pleadings and dismissed plaintiffs' cause of action.

Plaintiffs assigned as error the following: (1) That the court erred in sustaining the demurrer to the first amended petition. (2) That the court erred in rendering judgment for the defendant on the pleadings. (3) That the court erred in dismissing plaintiffs' cause of action.

The sole question before this court is whether or not the facts alleged in the petition as above quoted are sufficient to state a cause of action. This question is limited to whether or not the exchange of telegrams in the form quoted in the petition constituted a valid contract relative to the purchase and sale of an interest in real estate. There seems no question but that a valid contract involving real estate can be entered into by an exchange of telegrams (Plante v. Fullerton, 46 Okla. 11, 148 P. 87; Atwood v. Rose, 32 Okla. 355, 122 P. 929; Halsell v. Renfrow, 14 Okla. 674, 78 P. 118), which further limits the question before this court to the determination of whether or not these particular telegrams were sufficiently definite and complete to evidence such a meeting of the minds.

The plaintiffs in their appeal properly contend that all of the facts alleged in their petition must, for the consideration of defendant's demurrer, be considered to be true and correct, and insist that the telegrams and writings in question are sufficiently definite to constitute a binding contract of purchase and sale. Defendant contends that the contract is within the class of purported contracts declared to be invalid by the statute of frauds; that the petition indicates that Fredericks was the agent of defendant and not of the plaintiffs; that the description of the property is insufficient; that the interpretation placed upon the alleged contract by the plaintiffs in their letter requesting that the conveyance be forwarded to them with draft attached clearly indicates that the minds of the parties had never met, and that the words "one-fourth royalty" did not mean an undivided one-fourth interest in all oil, gas, and other minerals underlying defendant's land.

Without passing upon the question as to whether or not Fredericks was in fact the agent of the plaintiffs or the agent of the defendant, or the agent of both, we do not believe, for the purpose of considering the demurrer involved in this case, that the telegrams are sufficient evidence to establish the fact that he was defendant's agent and overcome the specific allegations in plaintiffs' petition that Fredericks was in fact their agent. Neither do we believe that after the contract involved in this case had been completed, the exchange of letters or telegrams then exchanged can affect the validity of the contract. Therefore, it is our opinion that neither the provisions of the papers forwarded to defendant for execution and delivery pursuant to a contract already entered into nor the contents of a letter

returning the papers to plaintiffs should be considered. The contract involved, if a valid contract, consists of the first three telegrams mentioned in this opinion covering the offer by Fredericks, the acceptance of the offer by the defendant, and the confirmation thereof by the plaintiffs.

All of the terms of this contract, if valid, are found in the first wire reading as follows:

"Have offer from C. S. Burgess, $3000 for one-fourth royalty in your land section 27, 20 north, 2 west. Advise you accept. Wire at once."

This wire was sent from Perry, Okla. The court will take notice that Perry, Okla., is in Noble county, and that there is a section 27, township 20 north, range 2 west in Noble county, and that there is no other section so described in Oklahoma. There is a somewhat similar question as to the sufficiency of the description of real estate involved in a contract made by an exchange of telegrams in the case of Martin v. Wiley, 110 Okla. 91, 236 P. 397. In that case, a wire was sent from Frederick, Okla., to a party at Lubbock, Tex., as follows:

"Will you accept seventy-five per month for your lease on the building on Tenth Street. * * * Man here waiting. Wire answer at once."

The reply was worded:

"Will rent three year lease one hundred per month. Take building as it is. Will fix roof in good shape."

The pertinent parts of the third wire read:

"Your building accepted at one hundred per month for three years as per your wire. Will expect immediate possession. Will hold your wire as contract until you draw one and send to me. Will return same signed with check as payment. Notify me when I get possession."

The fourth telegram was received from Lubbock, Tex., as follows:

"Our offer you take building as it is and must give time for present tenant to vacate."

An action was brought for damages for failure to deliver possession of a particular store building, and after judgment for the plaintiff, the owner of the building appealed, setting forth among other alleged errors that the telegrams exchanged between the plaintiff and Martin were insufficient to constitute a valid three-year lease in writing. In consideration of this point, this court said:

"The telegrams were sent from the city of Frederick and referred to the building as being located on Tenth street. The court will take judicial notice of the fact that the city of Frederick is located in Tillman county. The evidence did not disclose that defendants owned another building on Tenth street or in the city of Frederick. So far as this record is concerned, the defendant did not own any other building either on Tenth street or in the city of Frederick. The legal presumption is that the defendants did not intend to lease a stranger's property to the plaintiff, but did intend to lease the property and store building owned by them on Tenth street. No uncertainty arises by the written terms of the telegrams as to which store building on Tenth street the parties had reference to. The court will receive parol or extrinsic evidence to locate the building referred to on Tenth street in the city of Frederick; that is, to describe the lot on which the building is situated, and the block number. * * *

"It is not necessary to rely upon oral testimony in this case as to the store building which the defendant intended to lease to the plaintiff, for the reason that the written terms bind the defendants to lease a two-story brick store building to the plaintiff, situated on Tenth street, and the evidence shows that this is the only building owned by the defendants on the street in question. The oral evidence necessary in conjunction with the telegrams to particularly describe the store building goes no further than to show the lot on which the building is located and the number of the block. * * *

"The statute of frauds forbids the use of parol evidence or extrinsic evidence to select a certain property from other like properties owned by the defendant. We are able to reach the conclusion in this case, by the written terms of the telegrams, that the defendant intended to lease the building in controversy for the reason they owned no other building upon the street. * * *

"The provision which the defendants undertook to write into the formal lease was contrary to the written contract created by the telegrams between the parties. The telegrams recited herein were sufficient to constitute a valid three-year lease between the parties, and were sufficient to meet the requirements of the statute of frauds."

Applying similar reasoning to the telegrams exchanged in this case, it seems clear to this court that they contained within themselves a complete contract, inasmuch as the land and interest involved was adequately described and the purchase price therefor definitely set out, and on the allegation that Fredericks was the agent of the plaintiff, constituted a contract binding upon both parties.

Defendant in his brief, states:

"We think Halsell et al. v. Renfrow, 14 Okla. 674, 78 P. 118, covers every proposition, and is against the contention of plaintiffs in error in this case."

This court believes that the facts in that case are easily distinguishable from those involved here. In the Halsell Case, one Shields, as agent of Renfrow, wired Renfrow in Missouri, "Have sold the forty acres ten thousand cash five hundred forfeit. Answer." Renfrow wired in reply: "I confirm sale by you ten thousand cash, five hundred forfeit." It was then discovered that a small portion of the land which Renfrow thought he owned had theretofore been sold, and that a lease had been executed on the balance, making immediate delivery of possession impossible. Renfrow then came to Oklahoma City and endeavored to work out a new sale with Halsell, but being unsuccessful, he returned to Missouri without having consummated the same. Later, there was an exchange of letters which need not be considered here. This court, in that case, in holding that a valid contract for purchase and sale had not been made, said:

" 'Where a sufficient description is given in the contract, parol evidence may be resorted to in order to fit the description to the thing, but where an insufficient description is given or where there is no description, such evidence is inadmissible because the court will never receive parol evidence both to describe the land, and then to apply the description.' * * * It is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless, when the writing comes to be applied to the subject-matter. The terms may be abstract and of a general nature, but they must be sufficient to fix and comprehend the property which is the subject of the transaction, so that with the assistance of external evidence, the description, without being contradicted or added to, can be connected with and applied to the very property intended, and to the exclusion of all other property.

"Applying these tests, it is clear that there was no such written memoranda as the law recognizes as sufficient to supply the place of a written agreement. The first writing of any character appearing in the case is a check from Land, one of the plaintiffs, to Shields for $500. There is no means of identifying this check, or its purposes, except by parol evidence. It does not disclose anything that will supply any element of an agreement to sell the real estate in question. The next writing is the telegram from Shields to Renfrow, which states that he has 'sold the forty acres ten thousand cash, five hundred forfeit.' This telegram is from the agent to his principal, and it is not a communication between the parties to the transaction. Shields was not the agent of the plaintiffs nor acting for them; he was the agent for Renfrow, and communications between the agent and his principal do not ordinarily constitute a part of the agreement itself, but are explanatory of what has been done between the agent and the other party. * * * The next writing is the telegram from Renfrow to Shields, 'I confirm sale by you ten thousand cash five hundred forfeit.' So far no vendees have been mentioned and no description of the property given. * * * If the writings alone are to be held as sufficient memoranda to take the agreement out of the statute of frauds, **and we do not think they do,** then it would appear from such agreement that the consideration to be paid was $10,000 and the plaintiffs never tendered or offered to pay but $9,800. It is true that it claimed that Renfro agreed to deduct $200 on account of the Compton lot being deducted from the land, but this was a parol agreement. * * *

"We deem it clear that no such written memoranda or notes passed between Renfrow and the plaintiff as can, by the most liberal application of the well-established rules of law, be construed into a written contract. There is not an instrument, letter, memorandum or telegram signed by any of the plaintiffs and sent to Renfrow that has any reference whatever to the terms or provisions of an agreement, until the letter of Halsell declining the deed unless Renfrow would give possession at once and deduct $200 from the price as offered by Shields."

As stated before, we do not think the facts in this case are sufficiently analogous to those in the Halsell Case to make the actual holding in said case in point in our consideration of this demurrer, but, instead, we believe that the rules of law expressed therein, when applied to the facts in this case, as alleged in plaintiffs' petition, sustain this opinion.

The order and judgment of the trial court in sustaining defendant's demurrer, rendering judgment for defendant on the pleadings and dismissing plaintiffs' action, is therefore reversed and the case remanded, with instructions to the trial court to overrule the demurrer and proceed with the trial of the cause not inconsistent with this opinion.

The Supreme Court acknowledges the aid of Attorneys C. D. Ellison, J. A. Counts, and V. P. Crowe in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Ellison and approved by Mr. Counts and Mr. Crowe, the cause was assigned to a Justice

of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur.